## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **AMERICAN ARMINOX INC.,** | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BALL BAKER LEAKE LLC,** | ) | |
| **BALL BAKER LEAKE, LLP,** | ) | |
| and **JANICE PAGE, CPA,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## NATURE OF THE ACTION

1. This is an action arising out of a relationship between Plaintiff, American Arminox, Inc., and defendants, Ball Baker Leake LLC, Ball Baker Leake LLP and Janice Page, who performed professional accounting and financial services work for Plaintiff.

## PARTIES

2. Plaintiff American Arminox, Inc. ("Plaintiff") is a Delaware corporation. Plaintiff is a subsidiary of Arminox A/S, a company based in Viborg, Denmark.  Arminox A/S is one of the world's leading suppliers of stainless steel reinforcement for use in the construction industry.

3. Plaintiff is a citizen of the state of Delaware.

4. Defendant Ball Baker Leake LLC ("Ball Baker LLC") is a limited liability company formed in New York State with a principal place of business at 122 East 42nd Street, Suite 810, New York, New York 10168.

5. Ball Baker LLC is a citizen of the state of New York.

6. Defendant Ball Baker Leake, LLP ("Ball Baker LLP") is a limited liability partnership formed in New York State with a principal place of business at 122 East 42nd Street, Suite 810, New York, New York 10168.

7. Ball Baker LLP is a citizen of the state of New York.

8. Ball Baker LLC and Ball Baker LLP are collectively referenced herein as "Ball Baker."

9. Defendant Janice Page, CPA ("Page") is a Certified Public Account employed by Ball Baker. Upon information and belief, Page is a citizen of the state of New York with an address of 2727 Palisade Ave, Apt #9G, Bronx, NY 10463.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and because the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because all of the defendants are residents of New York.

12. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

13. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because all of the defendants herein are subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND

14. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

15. At all relevant times, until July 11, 2017, Defendant Ball Baker, who held itself out as a firm of certified public accountants possessing the skill, ability and experience of certified public accountants qualified to perform accounting work, was the accounting firm used by Plaintiff for, among other things, filing appropriate tax documents with the Internal Revenue Service and other tax authorities.

16. Upon information and belief, the relationship between Defendants and Plaintiff was memorialized in a service agreement, the terms of which were confirmed in a January 20, 2015 correspondence from Ball Baker to American Arminox, Inc. (collectively referred to as the "Agreement").

17. Defendants' representation and the services they provided to Plaintiff were continuing in nature until July 11, 2017, at which time Defendants terminated their representation of and services to Plaintiff in a letter dated July 11, 2017.

18. In its July 11, 2017 letter terminating services to Plaintiff, Defendant Ball Baker describes the services provided to Plaintiff as "bookkeeping and accounting services (data provided by Jean-Pierre Belmont); preparation of a compiled financial statement without notes for the year ended June 30; [and] the preparation [sic] corporate New York State and U.S. federal income tax returns."

19. At all relevant times, until July 11, 2017, Page, as an agent, servant, and/or employee of Ball Baker, performed services for Plaintiff pursuant to the Agreement.

20. At all relevant times, Page held herself out as a certified public accountant possessing the skill, ability and experience of a certified public accountant qualified to render accounting advice concerning federal, state and local tax matters, and to prepare federal and state tax returns for business enterprises such as Plaintiff.

21. During the course of Ball Baker and Page's representation of Plaintiff, Ball Baker and Page (1) made and admitted to making multiple accounting errors in Plaintiff's tax filings; and (2) engaged in a fraudulent course of action in concert with Plaintiff's former CEO and director, Jean-Pierre Belmont ("Belmont"), to actively conceal material information from Plaintiff regarding Belmont's misappropriation of Plaintiff's funds.

22. As one example of the numerous errors made in Plaintiff's U.S. federal tax filings, in Plaintiff's filing for the year beginning July 1, 2015 and ending June 30, 2016, which was filed by Defendants on August 17, 2016, Defendants failed to report two receivables that Plaintiff was to take as a loss, which totaled more than $200,000.00.

23. In a December 9, 2016 e-mail to Belmont, Defendant Page stated that she was "terribly embarrassed because I just noticed we made a major mistake in last year's accounting."

24. Defendant Page further stated that Defendants had "just noticed that there were two invoices listed on [Belmont's] spreadsheet that were to be reversed but we did not notice them on [Belmont's] spreadsheet until [December 9]."

25. Defendant Page's advice was to either "eliminate these receivables in the November accounting or redo the June 30, 2016 financials and amend those tax returns." Incredibly, Defendants failed to do either.

26. Defendants also acted on their own and in concert with Belmont to conceal from Plaintiff various methods through which Belmont was improperly siphoning and diverting funds

away from Plaintiff.  By way of example and not limitation, Defendants concealed from Plaintiff the existence of an account of Plaintiff's funds that Defendants used to pay certain commissions to Belmont that were never authorized by Plaintiff.

27. Defendants also conspired and acted in concert with Belmont to hide from Plaintiff the actions of a company called "Amerinox," which had been formed by Belmont.

28. The Amerinox entity was nothing more than a vehicle utilized by Belmont to convert goods belonging to Plaintiff and to sell them for profit to Plaintiff's own customers, which deprived Plaintiff of the resulting profit and diverted the profits to Amerinox and ultimately, to Belmont.

29. These actions and inactions by Defendants, among others, demonstrate that Defendants worked directly with Belmont against the interests of Plaintiff and actively participated in his wrongful acts.

## COUNT I
## BREACH OF CONTRACT

30. Plaintiff re-alleges all of the foregoing paragraph as if fully set forth herein.

31. Defendants had a legally binding contractual duty to provide services to Plaintiff under the Agreement.

32. Defendants breached the Agreement in several respects, including but not limited to the following:

    a.  By failing and/or refusing to provide services in accordance with the standards outlined in the Agreement and generally applicable to professionals providing services similar to those provided to Plaintiff by Defendants;

    b.  By failing to file accurate federal and state tax returns for Plaintiff and failing to file amendments to inaccurate tax returns; and

c.  By concealing from Plaintiff, in concert with Belmont, numerous financial circumstances that were contrary to the interests of Plaintiff and that significantly damaged Plaintiff.

d.  By falsely representing that the tax returns, reviews, opinions, and reports were performed in accordance with generally accepted accounting principles used in the United States when in fact, they were not.

e.  By failing to advise Plaintiff and/or actively concealing from Plaintiff wrongful actions taken by Belmont of which Defendants knew or should have known, which he committed both in concert with Defendants and on his own, that were contrary to the best interests of Plaintiff or that damaged Plaintiff's financial condition.

33. As a direct and proximate of Defendants' breach of the Agreement, Plaintiff has suffered damages in excess of $500,000.00.

## COUNT II
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

34. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

35. With respect to the Agreement, Defendants had an implied contractual obligation to:

a.  Perform and render services in a competent manner in accordance with the professional standard of care;

b.  Refrain from filing inaccurate tax returns and/or from failing to amend said inaccurate returns;

c.  Refrain from concealing information from Plaintiff regarding financial circumstances whose concealment would result in damage to Plaintiff;

    d.  Refrain from falsely representing that the tax returns, reviews, opinions, and reports were performed in accordance with generally accepted accounting principles used in the United States.

36. As a direct and proximate of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in excess of $500,000.00.

### COUNT III

### UNJUST ENRICHMENT
### (IN THE ALTERNATIVE)

37. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

38. This cause of action is plead in the alternative to Plaintiff's breach of contract claims.

39. Plaintiff conferred a benefit upon Defendants by paying for professional services which Defendants had agreed to render as provided for herein.

40. Defendants demonstrated incompetence and committed errors and mistakes, which constituted negligence, gross negligence and willful misconduct, and which were in violation of the applicable standard of care.

41. Accordingly, to the extent that Plaintiff paid Defendants for the services rendered and if the Court finds that any portion of the relationship between Plaintiff and Defendants was not governed by a contract, Defendants have been unjustly enriched to the detriment of Plaintiff, who did not receive value of the services for which Defendants received payment.

42. Accordingly, Defendants should be required to make payment to Plaintiff to prevent Defendants from being unjustly enriched.

## COUNT IV

### ACCOUNTING MALPRACTICE/PROFESSIONAL NEGLIGENCE

43. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

44. Defendants owed a duty to Plaintiff to exercise that degree of skill and care generally exercised in the accounting profession, and had an obligation to observe generally accepted accounting principles in preparing and filing Plaintiff's federal and state tax returns and in providing other business-related advice in connection with its accounting services.

45. In preparing and filing Plaintiff's federal and state tax returns and in providing other business-related advice in connection with its accounting services, Defendants breached their duties to Plaintiff to exercise due professional responsibility and care and by failing to use the degree of skill and learning normally possessed by accountants in good standing in a similar practice and under like circumstances, and possessed by professionals in good standing in a similar practice and under like circumstances who provide the services that Defendants promised to provide Plaintiff.

46. By way of example and not limitation, Defendants breached their duties as follows:

   a.   By failing to file accurate federal and state tax returns for Plaintiff and failing to file amendments to inaccurate tax returns; and

   b.   By concealing, in concert with Belmont, from Plaintiff numerous financial circumstances that were contrary to the interests of Plaintiff and that significantly damaged Plaintiff.

47. Further, Defendants falsely represented that the tax returns, reviews, opinions, and reports were performed in accordance with generally accepted accounting principles used in the United States.

48. Defendants knew or reasonably should have known that Plaintiff would rely upon their representations, the accuracy of the tax returns and Defendants' reviews, opinions, and reports in connection with Plaintiff's income tax returns as well as Defendants' representations as to the general financial condition of Plaintiff.

49. Defendants also failed to advise Plaintiff and/or actively concealed from Plaintiff the aforementioned wrongful actions taken by Belmont, which he committed in concert with Defendants or on his own, that were contrary to the best interests of Plaintiff or that damaged Plaintiff's financial condition.

50. Defendants knew or should have reasonably known that Plaintiff expected that and would rely upon Defendants and their expertise in communicating to Plaintiff circumstances in which an individual (here, Belmont) took actions that were contrary to the best interests of Plaintiff or that damaged Plaintiff's financial condition.

51. At all times during Defendants' representation of Plaintiff, Plaintiff reasonably relied in all respects upon Defendants' representations and the accuracy of the services provided to Plaintiff as accountants and professionals offering financial services.

52. By reason of the malpractice, negligence, carelessness, and recklessness of Defendants, Plaintiff has suffered damages, which will be proven at trial, believed to be in excess of $500,000.00.

## COUNT V

### FRAUDULENT MISREPRESENTATION

53. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

54. Among other things, Defendants represented to Plaintiff that the tax returns, reviews, opinions, and reports prepared by Defendants were done so in accordance with generally accepted accounting principles used in the United States and in accordance with all applicable standards of care.

55. Defendants also affirmatively represented that they exercised independence in the performance of their accounting functions, and/or intentionally omitted that the performance of said functions was not independent.

56. An example of Defendants' intentional and knowing lack of independence in the performance of their accounting functions with regard to Plaintiff is reflected in a December 14, 2016 email, in which Page states that her "relationship is with you [(Belmont)], not DK [(Denmark – i.e., Plaintiff)].  I will reveal nothing to them.  Have no fear."

57. Defendants knew or should have reasonably known that Plaintiff expected that and would rely upon Defendants and their expertise in communicating to Plaintiff circumstances in which an individual (here, Belmont) took actions that were contrary to the best interests of Plaintiff or that damaged Plaintiff's financial condition.

58. Defendants intentionally made fraudulent misrepresentations or acted in reckless disregard of the truth or accuracy of the false representations they made.

59. Defendants' representations and/or omissions were material and were knowingly false when made.

60. Plaintiff reasonably relied to their detriment upon Defendants' representations, omissions, and the accuracy and purported independence of Defendants' advice, reports, and opinions regarding Plaintiff's financial condition.

61. As a direct and proximate result of Plaintiff's detrimental reliance upon Defendants' fraudulent misrepresentations, Plaintiff has suffered damages, which will be proven at trial, believed to be in excess of $500,000.00.

<u>**COUNT VI**</u>

<u>**AIDING AND ABETTING FRAUD**</u>

62. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

63. As detailed herein, Belmont defrauded Plaintiff by siphoning and diverting funds from Plaintiff.

64. Defendants knowingly participated in Belmont's fraud with the intent to aid in his fraud.

65. Defendants took affirmative steps to further Belmont's fraud and failed to prevent the fraud.

66. Defendants knew and/or reasonably should have known that the inaccurate and false information, representations, and opinions contained in the advice, reports, and other documents that they prepared for Plaintiff, at the insistence of Belmont, were not independent and did not accurately reflect the financial condition of Plaintiff.

67. Defendants knew and/or reasonably should have known that Belmont was causing Defendants to give inaccurate and false advice or provide the reports and other

documents with the intent that Plaintiff would rely upon same to conduct Plaintiff's business.

68. Defendants rendered substantial assistance to Belmont in furtherance of his scheme to deceive and damage Plaintiff by explicitly or implicitly agreeing and/or conspiring with Belmont to prepare and deliver the inaccurate and false advice and reports and other documentation to conceal the actions taken by Belmont to siphon money from Plaintiff and to otherwise act contrary to the best interests of Plaintiff.

69. Plaintiff reasonably relied to its detriment upon Defendants' representations, omissions, and the accuracy and purported independence of the Defendants' inaccurate and false advice, reports, and other documents regarding the financial condition of Plaintiff.

70. As the direct and proximate result of the Defendants' actions, Plaintiff has suffered damages in excess of $500,000.00.

## COUNT VII

## AIDING AND ABETTING EMBEZZLEMENT

71. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

72. As detailed herein, Belmont embezzled from Plaintiff by siphoning and diverting funds from Plaintiff.

73. Defendants knowingly participated in Belmont's embezzlement with the intent to aid in his embezzlement.

74. Defendants took affirmative steps to further Belmont's embezzlement and failed to prevent the embezzlement.

75. Defendants knew and/or reasonably should have known that the inaccurate and false information, representations, and opinions contained in the advice, reports, and other documents that they prepared for Plaintiff, at the insistence of Belmont, were not independent and did not accurately reflect the financial condition of Plaintiff.

76. Defendants knew and/or reasonably should have known that Belmont was causing Defendants to give inaccurate and false advice or provide the reports and other documents with the intent that Plaintiff would rely upon same to conduct Plaintiff's business.

77. Defendants rendered substantial assistance to Belmont in furtherance of his scheme to embezzle from Plaintiff by explicitly or implicitly agreeing and/or conspiring with Belmont to prepare and deliver the inaccurate and false advice and reports and other documentation to conceal the actions taken by Belmont to siphon money from Plaintiff and to otherwise act contrary to the best interests of Plaintiff.

78. Plaintiff reasonably relied to its detriment upon Defendants' representations, omissions, and the accuracy and purported independence of the Defendants' inaccurate and false advice, reports, and other documents regarding the financial condition of Plaintiff.

79. As the direct and proximate result of the Defendants' actions, Plaintiff has suffered damages in excess of $500,000.00.

## COUNT VIII

## AIDING AND ABETTING CONVERSION

80. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

81. As detailed herein, Belmont defrauded Plaintiff by siphoning and diverting funds from Plaintiff.

82. Defendants conspired and acted in concert with Belmont to hide from Plaintiff the actions of a company called "Amerinox," which had been formed by Belmont.

83. The Amerinox entity was nothing more than a vehicle utilized by Belmont to convert certain goods belonging to Plaintiff and to sell them for profit to Plaintiff's own customers, depriving Plaintiff of the resulting profit and diverting it to Amerinox and ultimately, Belmont.

84. Defendants knowingly participated in Belmont's conversion with the intent to aid in his conversion.

85. Defendants took affirmative steps to further his conversion and failed to prevent the conversion.

86. Defendants knew and/or reasonably should have known that the inaccurate and false information, representations, and opinions contained in the advice, reports, and other documents that they prepared for Plaintiff, at the insistence of Belmont, were not independent and did not accurately reflect the financial condition of Plaintiff.

87. Defendants knew and/or reasonably should have known that Belmont was causing Defendants to give inaccurate and false advice or provide the reports and other

documents with the intent that Plaintiff would rely upon same to conduct Plaintiff's business.

88. Defendants rendered substantial assistance to Belmont in furtherance of his scheme to deceive and damage Plaintiff by explicitly or implicitly agreeing and/or conspiring with Belmont to prepare and deliver the inaccurate and false advice and reports and other documentation to conceal the actions taken by Belmont to siphon money from Plaintiff and to otherwise act contrary to the best interests of Plaintiff.

89. Plaintiff reasonably relied to its detriment upon Defendants' representations, omissions, and the accuracy and purported independence of the Defendants' inaccurate and false advice, reports, and other documents regarding the financial condition of Plaintiff.

90. As the direct and proximate result of the Defendants' actions, Plaintiff has suffered damages in excess of $500,000.00.

## COUNT IX

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

91. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates them herein by reference.

92. As CEO of Plaintiff, Belmont owed fiduciary duties of loyalty and care to Plaintiff.

93. As part of his duties to Plaintiff, Belmont was obligated to provide Plaintiff with accurate information regarding the financial condition of the company.

94. Belmont also owed a fiduciary duty to Plaintiff to act in the best interests of the Company and to not engage in any conduct contrary to the best interests of Plaintiff.

95. Belmont knew that Plaintiff would see and rely on the advice, reports, and other documents that Defendants prepared at the insistence of Belmont.

96. Belmont breached his fiduciary duty to Plaintiff by colluding with and/or directing Defendants to provide purportedly independent advice, reports, and other documents that concealed many of the actions that Belmont was taking that were contrary to the best interests of Plaintiff.

97. Defendants knowingly participated in Belmont's breach of his fiduciary duty with the intent to aid in his breach of his fiduciary duty.

98. Defendants took affirmative steps to aid Belmont in his breach and failed to prevent the breach.

99. Defendants knew and/or reasonably should have known that the information, representations, and opinions contained in the advice, reports, and other documents that they prepared at the insistence of Belmont were not independent and did not accurately reflect the financial condition of Plaintiff

100.    Defendants knew and/or reasonably should have known that Belmont was causing Defendants to give the advice or provide the reports and other documents with the intent that Plaintiff rely upon same to conduct Plaintiff's business.

101.    Defendants rendered substantial assistance to Belmont in furtherance of his scheme by explicitly or implicitly, agreeing or conspiring with Belmont to prepare advice and reports and other documentation to conceal the actions taken by Belmont to siphon money from Plaintiff and to otherwise act contrary to the best interest of Plaintiff.

102.    Plaintiff reasonably relied to its detriment upon the Defendants' representations, omissions, and the accuracy and purported independence of the Defendants' advice, reports, and other documents regarding the financial condition of Plaintiff.

103.     As the direct and proximate result of the Defendants' actions, Plaintiff has suffered damages in excess of $500,000.00.

**WHEREFORE**, Plaintiff American Arminox, Inc. requests that judgment be entered in its favor and against Defendants Ball Baker Leake LLC, Ball Baker Leake, LLP, and Janice Page, CPA in an amount to be proven at trial but in excess of Five Hundred Thousand Dollars and Zero Cents ($500,000.00), plus pre- and post- judgment interest at the legal rate, for punitive damages, for reasonable attorneys' fees and expenses, and costs and for any other relief the Court deems appropriate and just.

**GARIBIAN LAW OFFICES, P.C.**

*/s/ Antranig Garibian*_____
Antranig Garibian, Esquire
18 East 41st Street, 6th Floor
New York, NY 10017
ag@garibianlaw.com
*Attorneys for Plaintiff*

OF COUNSEL:

CONNOLLY GALLAGHER LLP

/s/ Josiah R. Wolcott
Josiah R. Wolcott, Esq.
267 East Main Street
Newark, Delaware 19711
(302) 888-6271
*Attorneys for Plaintiff*
*(Motion for Admission Pro Hac Vice to be filed)*